**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Antero Resources Corporation,**
**Petitioner,**

**vs.)  No. 20-0530** (Doddridge County, Business Court Division 17-AA-1)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**David Sponaugle,**
**Assessor of Doddridge County, and**
**The County Commission of Doddridge County,**
**Respondents.**

And

**Antero Resources Corporation,**
**Petitioner,**

**vs.)  No. 20-0531** (Doddridge County, Business Court Division 17-AA-3)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**David Sponaugle,**
**Assessor of Doddridge County, and**
**The County Commission of Doddridge County,**
**Respondents.**

And

**Antero Resources Corporation,**
**Petitioner,**

**vs.)  No. 20-0579** (Ritchie County, Business Court Division 17-AA-1)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**Arlene Mossor,**
**Assessor of Ritchie County, and**

1

**The County Commission of Ritchie County,
Respondents.**

## MEMORANDUM DECISION

The Petitioner herein, Antero Resources Corporation ("Antero"), by counsel Lawrence D. Rosenberg[1], appeals three separate orders concerning the West Virginia State Tax Commissioner's[2] methodology for valuing its wells located in Doddridge County during the 2016 and 2017 tax years and Ritchie County during the 2016 tax year.[3] Respondents are the West Virginia State Tax Commissioner, the Assessor and County Commission of Doddridge County, West Virginia and the Assessor and County Commission of Ritchie County, West Virginia.[4] In the three orders being appealed, the business court denied Antero's motions for summary judgment and granted Respondents' cross-motions for summary judgment, which held that the Tax Commissioner's re-valuations of Antero's wells located in Doddridge and Ritchie Counties were appropriate. On appeal to this Court, Antero argues that the circuit court erred and requests that this Court overrule the business court's orders and remand the three cases for a new assessment.

---

[1] In addition, Antero is also represented by Ancil G. Ramey and John J. Meadows of Steptoe & Johnson PLLC, and Craig A. Griffith of the Law Offices of Jonathon P. Jester.

[2] Since the filing of this case, the West Virginia State Tax Commissioner has changed, and the Tax Commissioner is now Matthew R. Irby. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[3] Antero filed three separate appeals with respect to summary judgment orders that were entered by the Business Court Division. The three appeals were consolidated by order entered on September 21, 2021.

[4] The West Virginia State Tax Commissioner is represented by Attorney General Patrick Morrisey, Senior Deputy Attorney General Katherine A. Schultz, and Assistant Attorney Generals L. Wayne Williams and Sean M. Whelan. The County Commission of Doddridge County is represented by R. Terrance Rodgers and Jonathan Nicol of Kay Casto & Chaney PLLC. The Assessor and County Commission of Ritchie County did not make an appearance before this Court.

This Court has now carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities. Upon review, we agree with the business court's conclusion that the Tax Commissioner's re-valuations were appropriate under the facts of this case. Accordingly, we affirm the business court's orders entered on June 15, 2020. Because there is no substantial question of law, a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

This is the second time that this Court is being asked to review the Tax Commissioner's methodology for valuing Petitioner's Marcellus Shale horizontal wells located in Doddridge County for tax years 2016 and 2017 and Ritchie County for tax year 2016. In the 2019 case of *Steager v. Consol Energy, Inc.,* 242 W. Va. 209, 832 S.E.2d 135 (2019), we considered the Tax Commissioner's methodology for valuing Antero's Marcellus Shale horizontal gas wells located in Doddridge County for tax years 2016 and 2017 and in Ritchie County for tax year 2016.[5] In the instant case, this Court is now being asked to review the Tax Commissioner's methodology for valuing Antero's wells that produced *both oil and gas* located in Doddridge County for tax years 2016 and 2017 and in Ritchie County for tax year 2016.

It is undisputed that Antero owns and operates numerous Marcellus Shale horizontal wells, which are subject to annual *ad valorem* taxation by the assessors of Doddridge and Ritchie Counties. For tax years 2016 and 2017, these wells were appraised for *ad valorem* tax purposes by the Tax Commissioner and assessed by the respective county commissions sitting as Boards of Assessment ("Board"). The Boards of Doddridge and Ritchie counties upheld the Tax Commissioner's valuations, and Antero appealed those decisions to the circuit court. The matters were then referred to the business court. In 2018, the business court concluded that the "Tax Department [had] failed to assess the wells at their true and actual value." *Id.* at 216, 832 S.E.2d at 142. The Tax Commissioner appealed, and this Court affirmed the business court's orders in part, reversed in part, and remanded the case. Because this Court "does not have the authority to fix assessments because such authority is vested by statute in the circuit courts," we remanded the *Consol*

_____

[5] The 2019 case addressed seven consolidated appeals from orders valuing gas wells owned by Consol Energy, Inc. and Antero.

*Energy* case to the business court for entry of an order fixing the assessment. *Id.* at 225, 832 S.E.2d 135, 151.[6]

Upon remand, the assessment had to be corrected so Petitioner and the Tax Commissioner prepared "re-valuations" of certain wells.[7] Although the parties agreed as to some re-valuations, they disagreed about the re-valuations of Antero's wells that produced both oil and natural gas. Thereafter, the parties filed cross-motions for summary judgment as to the re-valuations for the wells that produced both oil and natural gas. The business court found the Tax Commissioner's re-valuations to be "fair" and "reasonable" and granted summary judgment in favor of Respondents.

Antero's appeal to this Court followed.

The case sub judice is before this Court on appeal from the orders of the business court adopting the Tax Commissioner's re-valuations of Antero's Marcellus Shale horizontal wells in Doddridge and Ritchie counties after finding such re-valuations to be reasonable. "As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct," and taxpayers who wish to challenge the assessment bear the burden "to demonstrate by clear and convincing evidence that the tax assessment is erroneous." Syl. Pt. 2, in part, *Western Pocahontas Propertis, Ltd. v. County Comm'n of Wetzel Cty*, 189 W. Va. 322, 431 S.E.2d 661 (1993). Further, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl.

---

[6] Specifically, this Court held that

West Virginia Code of State Rules § 110-1J-4.3 (2005) does not permit the imposition of a "not to exceed" limitation on the operating expense deduction authorized thereunder and use of such limitation along with a percentage deduction violates the "equal and uniform" requirement of West Virginia Constitution Article X, Section 1, as well as the equal protection provisions of the West Virginia and United States Constitutions.

*Id.* at Syl. Pt. 8.

[7] Antero admitted that "the values of the wells that produced only natural gas" would "not change" under the re-valuation.

Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

In the instant appeal, Antero contends that the Tax Commissioner's re-valuation violates West Virginia Code of State Rules § 110-1J-4.3 as well as this Court's 2019 decision in *Consol Energy* with respect to wells that produce both oil and gas.[8] Specifically, Antero contends that the re-valuation at issue violates Syllabus Point 12 of *Consol Energy*, which provides that "[t]he provisions contained in West Virginia Code of State Rules §§ 110-1J-4.1 and 110-1J-4.3 (2005) for a deduction of the average annual industry operating expense requires the use of a singular monetary average deduction." While this argument requires a review of the *Consol Energy* case, that decision did *not* specifically address assessment of wells that produce both oil and gas.

In *Consol Energy,* the Tax Commissioner and others appealed the business court's rulings in favor of Antero. This Court began by reviewing the formula to determine the value of gas wells for *ad valorem* taxation purposes contained in West Virginia Code of State Rules § 110-1J-4.1 as well as the Tax Department's Administrative Notice 2016-08. West Virginia Code of State Rules § 110-1J-4.1 describes the formula as follows:

> 4.1. General. -- Oil and/or natural gas producing property value shall be determined through the process of applying a yield capitalization model to the net receipts (gross receipts less royalties paid less operating expenses) for the working interest and a yield capitalization model applied to the gross royalty payments for the royalty interest.

Further, Administrative Notice 2016-08 provided that for Marcellus Shale horizontal wells, "the maximum operating expenses allowed is 20% of the gross receipts derived from gas production, not to exceed $150,000." For tax year 2017, Administrative Notice 2017-08 provided that for gas production in Marcellus Shale horizontal wells, "the maximum operating expense" deduction was "20% of the gross receipts … not to exceed $175,000."

---

[8] West Virginia Code of State Rules § 110-1J-4.3 provides that the Tax Commissioner shall "every five (5) years, determine the average annual industry operating expenses per well. The average annual industry operations expenses shall be deducted from working interest gross receipts to develop an income stream for application of a yield capitalization procedure."

This Court in *Consol Energy* affirmed, in part, reversed, in part, and remanded the case to the business court. In reversing, we held that our legislative rules that provide "for a deduction of the average annual industry operating expense require[] the use of [a] singular monetary average deduction," not the "use of a percentage." *Id.* at 225, 832 S.E.2d at 151. In addition, this Court concluded that the Tax Commissioner's methodology of using "a percentage" for smaller wells and a monetary average for larger wells resulted in "two differing formulas to calculate operating expenses," *Id.* at 221, 832 S.E.2d at 147, and thereby violated the West Virginia Constitution's equal and uniform requirement and the United States and West Virginia Constitutions' equal protection provisions. *Id.* at Syl. Pt. 8. In order to resolve that inequality, we mandated that the "deduction of the average annual industry operating expense" be calculated "us[ing] a singular monetary average deduction." *Id.* at Syl. Pt. 12.

Antero now argues that the Tax Commissioner's re-valuation following remand applies a percentage deduction, "using a new percentage-based 'weighting methodology,'" which Antero describes as another "variant of the same sliding-scale" that was rejected by this Court in *Consol Energy*.[9] We disagree.

The wells at issue in this case produce both oil and natural gas. Following the remand in *Consol Energy*, Antero provided the Tax Commissioner with a list of wells for tax years 2016 and 2017 that were subject to re-valuation. According to the Tax Commissioner, wells that produced only natural gas were re-valued utilizing a deduction of $150,000 per well for tax year 2016 and $175,000 per well for tax year 2017, and wells producing only oil were re-valued using a deduction of $5,750 per well. The issue, however, became the re-valuation of Antero's wells that produced both oil and natural gas. With respect to those wells, the Tax Commissioner applied a deduction that was established in Administrative

---

[9] The Tax Commissioner asserts that Antero did not raise any objection to the method in which the Tax Commissioner valued its wells producing both oil and gas in the *Consol Energy* case. For this reason, the Tax Commissioner argues that Antero has waived this assignment of error. Although it appears that Antero failed to raise this objection in court until 2020 in its motion for summary judgment, we will nonetheless address this assignment of error in light of the business court's findings related to this issue.

Notices 2016-08 and 2017-08.[10]  In tax year 2016, the Tax Commissioner permitted a maximum deduction of $5,750 for oil and $150,000 for gas, depending upon the percentage of gas versus oil produced by each well.[11]  In tax year 2017, the maximum deduction was $5,750 for oil and $175,000 for gas depending upon the production percentages.

*After* receiving the Tax Commissioner's re-valuations following the remand in *Consol Energy*, Antero objected to the application of the deduction for its wells that produced both oil and gas.  It is undisputed that Antero failed to object to the method in which the Tax Commissioner valued its wells producing both oil and gas while the *Consol Energy* case was being litigated.[12]  Upon remand, Antero argued, for the first time, that its wells that produced both oil and gas should receive a *combined* deduction of $5,750 for oil and a deduction of $150,000 (for tax year 2016) or $175,000 (for tax year 2017). Before this Court, Antero contends that its method for valuing the oil and gas producing wells uses a singular monetary average as required by this Court in *Consol Energy.*  According to Antero, the value of its

[10] As this Court noted in *Consol Energy*, "[e]ach year the Tax Department issues an Administrative Notice which states what the average annual industry operating expense is for that year."  *Id.* at 141, 832 S.E.2d at 215.

[11] Administrative Notice 2016-08 provided:
> In instances where the well is producing both oil and gas, the allotted maximum ordinary operating expense will vary between $5,000 and $5,750 depending upon the percentage of gas versus oil receipts involved.   For Marcellus vertical wells the allotted maximum operating expense will vary between $5,750 and $30,000 depending upon the percentage of gas versus oil receipts involved. For Marcellus horizontal wells the allotted maximum operating expense will vary between $5,750 and $150,000 depending upon the percentage of gas versus oil receipts involved.   For horizontal, other than Marcellus, the allotted maximum operating expense will vary between $5,750 and $20,000 depending upon the percentage of gas versus oil receipts involved.

[12] We recognize that Antero would have had to raise this as a cross-assignment of error, but that was not done in the *Consol Energy* case.

7

wells located in Doddridge County for tax year 2016 should have been $808,176,064 instead of $812,541,283 as calculated by the Tax Commissioner. Antero further argues that the value of its wells located in Doddridge County for tax year 2017 should have been $489,492,958 instead of $507,215,246 as calculated by the Tax Commissioner. Finally, Antero argues that the value of its wells located in Ritchie County for tax year 2016 should have been $191,083,218 instead of $194,188,277 as calculated by the Tax Commissioner. In its order rejecting Antero's re-valuations, the business court noted that Antero "seeks a different valuation methodology than that was utilized for every other Marcellus well in the State of West Virginia in TY 2016 [and TY 2017]."

The Tax Commissioner supported its re-valuation with an affidavit from Cynthia R. Hoover, the Tax & Revenue Manager of the West Virginia Property Tax Division, Special Properties Section. Ms. Hoover re-valued the wells at issue in this case based on the percentage of each resource produced by the individual well as required by Administrative Notice 2016-08. In order to better explain the Tax Commissioner's method of valuing Antero's wells that produced both oil and gas, Ms. Hoover provided the following example:

> For example, if 75% of a Marcellus Shale horizontal well's gross receipts were derived from natural gas and 25% of gross receipts were derived from oil production, then the Property Tax Division pro-rated the Average Annual Industry Operating Expense as: 75% ($150,000) + 25% ($5,750) = $113,937.50.

Antero concedes that the Tax Commissioner's re-valuation is based on the application of a monetary average, but it argues that the monetary average is not "singular" as required by *Consol Energy*.

The business court correctly noted that *Consol Energy* "did not address" the issue in the instant case because the methodology used by the Tax Commissioner to value Antero's wells that produced both oil and gas was not challenged in the *Consol Energy* case. Antero argues that there is no basis for the business court's distinction between wells that produce only oil or only gas and those that produce both oil and gas. In support of this argument, Antero cites to the language of West Virginia Code of State Rules § 110-1J-4.1 which applies to "[o]il and/or natural gas producing property." However, this does not change the holding in *Consol Energy*. *Consol Energy* only addressed the methodology and deduction for gas wells, not wells that produce both oil and gas. Upon remand, the Tax

8

Commissioner re-valued Antero's wells producing both oil and gas. According to the business court, the wells at issue in the instant case presented a "special circumstance" that was not addressed in *Consol Energy*. The Tax Commissioner's methodology for valuing the wells at issue in this case took into account the amount of oil produced versus the amount of gas produced and was a reasonable exercise of the Tax Commissioner's discretion. We agree with the business court that the wells at issue in the instant case present a "special circumstance" and that the Tax Commissioner's re-valuation does not run afoul of this Court's mandate in *Consol Energy* because, in *Consol Energy*, we were not presented with, nor did we consider, these special circumstances. The Tax Commissioner's re-valuation uses singular monetary averages. The percentage is used to determine to what extent these singular monetary averages apply, based on the amount of gas versus oil produced, and is thus not improper.

Antero's remaining assignments of error address guidance from the Tax Department that was issued *after* the orders being appealed in this case were entered and claims that the Tax Commissioner's methods of assessment are unconstitutional. Specifically, on June 30, 2020, the Tax Commissioner issued its June 2020 Guidance, [13] which Antero contends should be applied retroactively to the consolidated matters at issue here. [14] In addition, Antero argues that the Tax Commissioner's failure to apply the June 2020 Guidance is arbitrary and capricious and in violation of the Administrative Procedures Act and due process. We disagree.

The document at the heart of these assignments of error was issued *after* the orders being appealed in the instant cases. Therefore, the business court did not consider the June 30, 2020 Guidance. This Court has long held that it "will not decide nonjurisidictional questions which were not considered and decided by the court from which the appeal has been taken." Syl. Pt. 7, in part, *In re Michael Ray*

---

[13] Antero refers to the document as "June 2020 Guidance," and the Tax Commissioner refers to it as "June 2020 Notice."

[14] In its brief, Antero describes the June 2020 Guidance. On or about October 15, 2020, Antero moved to file additional documents with the appendix in these consolidated cases or to file a supplemental appendix herein. The documents Antero wished to provide as supplements were the "June 2020 Guidance" and a "Notice of Withdrawal of the Guidance." By Corrected Order entered on January 28, 2021, this Court refused Antero's motion to supplement the appendix record with these documents.

*T.*, 206 W. Va. 434, 525 S.E.2d 315 (1999).  Likewise, the constitutional claims advanced by Antero in the instant matter do not appear to have been raised before the business court following remand.  While this Court may, in its discretion, address constitutional issues that were not properly preserved at the trial court level, "when the constitutional issue is the controlling issue in the resolution of the case,"  syl. pt. 2, *Louck v. Cormier*, in part, 218 W. Va. 81, 622 S.E.2d 788 (2005),  we decline to exercise such discretion in this case.  Because the constitutional deficiencies alleged by Antero were not addressed by the business court in its orders now before us, we do not have an adequate record  to properly consider such claims.  Accordingly, Antero's constitutional claims must be left for another day as our decision in this matter does not resolve such claims.  For these reasons, we decline to address Antero's assignments of error relating to the June 2020 Guidance and constitutional claims.

Based upon all of the foregoing, the orders of the business court are affirmed.

Affirmed.

**ISSUED**:  April 8, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment